UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

UNITED STATES OF AMERICA,                      :
                                               :
          v.                                   :
                                               :          **DECISION & ORDER**
ALL ASSETS HELD IN RAYMOND JAMES               :          19-CV-377 (WFK) (CHK)
& ASSOCIATES, INC. ACCOUNT NUMBER              :
XXXX4539 IN THE NAME OF DELTORA                :
ENTERPRISES GROUP CO. LTD., AND ALL            :
FUNDS TRACEABLE THERETO,                       :
                                               :
                           Defendant *in rem*. :
------------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

The United States of America brings this civil action *in rem*, seeking forfeiture of the assets held in a brokerage account at Raymond James & Associates, Inc. ("Raymond James") in the name of Deltora Enterprises Group Co. Ltd. ("Deltora"). Deltora, Gonzalo Eduardo Monteverde Bussalleu ("Monteverde"), and Maria Isabel Carmona Bernasconi ("Carmona," and together with Deltora and Monteverde, the "Claimants") claim rights to the assets. The Claimants now move to dismiss this action for due process violations, failure to state a claim, improper venue, and failure to prosecute. Raymond James moves to transfer custody of the assets to the Government. For the reasons stated below, the Court **DENIES** Claimants' motions and **RESERVES** on Raymond James's motion.

## BACKGROUND

From 2001 to 2015, a Brazilian holding company named Odebrecht S.A. ("Odebrecht")[1] paid approximately $800 million in bribes to, and for the benefit of, foreign officials, political parties, and candidates in multiple countries for the purpose of obtaining and retaining business. Am. Compl. ¶¶ 18(a), 19, ECF No. 69. Odebrecht laundered these payments through various bank accounts associated with offshore entities. *Id.* ¶¶ 24, 26.

On June 8, 2017, the United States Government obtained a pre-forfeiture seizure warrant in the Middle District of Florida pertaining to assets allegedly constituting or derived from proceeds traceable to Odebrecht's bribery funds (the "Defendant Assets"). *See* Raymond James

---

[1] Odebrecht is now named "Novonor." Am. Compl. ¶ 18(a) n.1.

Mot. for Release of Funds, Ex. 1, ECF No. 62-1; *see, e.g.,* Am. Compl. ¶ 60 (alleging forfeiture under 18 U.S.C. § 981(a)(1)(C)). The Defendant Assets, including securities and cash, are currently held in a brokerage account at Raymond James & Associates, Inc. ("Raymond James") in the name of Deltora Enterprises Group Co. Ltd. ("Deltora"). Am. Compl. ¶ 1. Deltora is a company organized under the laws of the British Virgin Islands. *Id.* ¶ 18(f). Deltora is owned by two Peruvian citizens: Gonzalo Eduardo Monteverde Bussalleu ("Monteverde") and Maria Isabel Carmona Bernasconi ("Carmona"). *Id.* ¶ 18(g), (h). The Government alleges Monteverde and Carmona controlled the Deltora account at Raymond James (the "Deltora Account") and helped to launder at least $14 million of bribery payments for Odebrecht through entities under their control. *Id.* ¶ 24. The Government further contends Monteverde and Carmona controlled other accounts under Deltora's name and the names of other entities. *Id.* ¶ 37.

Upon obtaining the seizure warrant, the Government initially directed Raymond James to liquidate the Deltora Account and to provide the Government with a check for its value. Raymond James Mot. for Release of Funds, Ex. 2, ECF No. 62-2. Shortly thereafter, former counsel for Deltora, Monteverde, and Carmona (together, the "Claimants") entered into an agreement with the Government permitting Raymond James to restrain the Deltora Account instead of liquidating it.[2] *See* First Mot. to Dismiss, ECF No. 39-5 (June 28, 2017 letter from the Government memorializing the agreement). Under this agreement, the Defendant Assets remained in the Deltora Account with trading allowed but distributions prohibited. *See id.* The parties continued to communicate until September 2017, after which they were not in contact for

---

[2] Although the Court dismisses Monteverde's and Carmona's individual claims for lack of standing, *infra* Discussion Section I, the Court refers to Deltora, Monteverde, and Carmona, collectively, as "Claimants."

approximately nine months.  Levy Decl. ¶¶ 3–5, ECF No. 45; Ex. A to Levy Decl., ECF No. 45-3.

Claimants retained their current counsel in late May of 2018.  First Mot. to Dismiss at 11, ECF No. 39.  On August 30, 2018, Claimants filed a motion in the Middle District of Florida seeking return of the property or, in the alternative, that the Government file a forfeiture action within 90 days.  *Id.* at 10.  On November 3, 2018, Claimants also filed a civil action in the Middle District of Florida.  *Id.* at 11; *see Deltora Enters. Grp. et al., v. United States*, 18-CV-2713 (M.D. Fla.).

On January 18, 2019, the Government filed a civil forfeiture action *in rem* against the Deltora Account in the Eastern District of New York.  Compl., ECF No. 1.  The Government argues the Defendant Assets are property constituting or deriving from proceeds traceable to unlawful activities; namely, bribery of a foreign official, violations of the Foreign Corrupt Practices Act ("FCPA"), violations of Panamanian law, and money laundering transactions.  *See generally* Am. Compl.; *see also* 18 U.S.C. § 1956(a)(1)(B)(i) (stating it is unlawful to conduct financial transactions designed to conceal the source, ownership, or control of proceeds of specified unlawful activities); 18 U.S.C. § 1956(c)(7) (defining specified unlawful activity).  On February 5, 2019, the Court issued another warrant authorizing seizure of the Defendant Assets and the "use [of] discretion and whatever means appropriate to protect and maintain the Defendant [A]ssets." ECF No. 4.  On February 20, 2019, Deltora, Monteverde, and Carmona each filed claims to the Defendant Assets.  ECF Nos. 6–8.  On February 25, 2019, the Government moved to dismiss Claimants' action in the Middle District of Florida for lack of subject matter jurisdiction.  *Deltora Enters. Grp. et al., v. United States*, 18-CV-2713 (M.D. Fla.), ECF No. 11.

On March 29, 2019, the Government moved to stay this action. Mot. to Stay, ECF No. 18. On April 3, 2019, the Court granted the stay based on the Government's representations "that the continuing prosecution of this civil forfeiture case would adversely affect the prosecution of the related criminal investigation." Minute Entry dated April 3, 2019. The Court subsequently denied Claimants' motions for reconsideration, and the Second Circuit dismissed Claimants' appeal of the same for lack of appellate jurisdiction. Minute Entries dated April 4, 2019, and April 8, 2019; USCA Mandate, ECF No. 25. On January 13, 2020, the Court granted the parties' joint stipulation agreeing to maintain the Defendant Assets in the Deltora Account at Raymond James pending the resolution of this action. Order, ECF No. 27.

On March 24, 2020, Claimants moved to lift the stay. ECF No. 28. Later, on August 14, 2020, Claimants moved for a hearing on the status of the stay. ECF No. 36. On August 20, 2020, the Court denied these motions. Minute Entry dated August 20, 2020.

In May 2022, the Government advised Claimants' counsel it was prepared to lift the stay. Levy Decl. ¶ 12. Acting upon the request of Claimants' counsel, the Government refrained from moving to lift the stay until September 9, 2022. Levy Decl., Ex. C, ECF No. 45-3 (emails from Claimants' counsel asking the Government to delay its filing until September 2, 2022, at the earliest); *see* Mot. to Lift Stay, ECF No. 37. Thereafter, on September 19, 2022, the Court granted the Government's motion to lift the stay and ordered a briefing schedule as to Claimants' anticipated dispositive motions. Order, ECF No. 38.

On October 31, 2022, Claimants moved to dismiss the action based on violations of due process. *See generally* First Mot. to Dismiss. On November 9, 2022, Claimants also moved to dismiss the action for failure to state a claim and improper venue. Second Mot. to Dismiss, ECF No. 40. On December 9, 2022, the Government cross-moved to strike the claims to the

Defendant Assets filed by the individual claimants—Monteverde and Carmona—based on lack

of standing.  Gov't Opp'n to First Mot. to Dismiss and Cross-Motion to Strike, ECF No. 43.  On

February 21, 2023, the parties completed briefing on Claimants' motions to dismiss and the

Government's cross-motion to strike.[3]  *See* ECF No. 56.

On November 26, 2024, Raymond James moved to transfer custody of the Defendant

Assets to the Government.  Mot. for Release of Funds, ECF No. 62.  On January 6, 2025,

Claimants moved to dismiss the action for lack of prosecution (their third motion to dismiss).

Third Mot. to Dismiss, ECF No. 67.  On January 14, 2025, the Government filed an Amended

Complaint.[4]  *See generally* Am. Compl.  On August 1, 2025, the Court held a status conference,

after which it directed the parties to file proposed briefing and discovery schedules.  Minute

Entry dated August 1, 2025.  On August 19, 2025, the Court adopted the Government's proposed

discovery schedule and the parties' joint proposed supplemental briefing schedule.  Order, ECF

No. 76.  The Court also scheduled a two-week trial to commence on April 6, 2026.  *Id.*

## LEGAL STANDARD

### I.    Fed. R. Civ. P. 12(b)(6)

"Motions to dismiss *in rem* forfeiture actions are governed by Federal Rule of Civil

Procedure 12(b) and Rule G of the Supplemental Rules for Admiralty or Maritime Claims and

Asset Forfeiture Actions."  *In re 650 Fifth Ave. & Related Props.*, 777 F. Supp. 2d 529, 541

(S.D.N.Y. 2011) (Holwell, J.).  Under Fed. R. Civ. P. 12(b)(6), "a complaint must contain

---

[3] Claimants also moved to unseal two *ex parte* affidavits filed by the Government in support of the Government's motions for a stay and for a search and seizure warrant.  ECF No. 47.  On September 30, 2025, the Court referred to Magistrate Judge Clay H. Kaminsky all current and future discovery disputes, including Claimants' aforementioned motion to unseal.  ECF No. 80.
[4] The Amended Complaint unseals the names of individuals and companies mentioned in the Complaint.  Gov't Ltr. to the Court, ECF No. 69-1.  Claimants' counsel "consented to the filing of the deanonymized Amended Complaint."  *Id.*

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under the Supplemental Rules, a complaint for civil asset forfeiture must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions ("Supp. R.") G(2)(f).  "No complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish forfeitability of the property." 18 U.S.C. § 983(a)(3)(D).

In considering Claimants' motions to dismiss, the Court accepts as true all factual allegations in the Amended Complaint and draws all reasonable inferences in the Government's favor. *Twombly*, 550 U.S. at 555.  The Court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## II.    Fed. R. Civ. P. 41(b)

District courts may dismiss an action because of the plaintiff's failure to prosecute.  Fed. R. Civ. P. 41(b); *Link v. Wabash R. Co.*, 370 U.S. 626, 629–30 (1962) ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted.").  Dismissals under Rule 41(b) are with prejudice unless otherwise stated. Fed. R. Civ. P. 41(b).

# DISCUSSION

## I.    Monteverde and Carmona Lack Standing to Challenge the Government's *in rem* Forfeiture Action Against the Defendant Assets.

As a threshold matter, the Court must first decide the Government's motion to strike Monteverde's and Carmona's claims to the Defendant Assets for lack of standing.[5]  Supp. R. G(8)(c)(i)–(ii) ("The [Government's] motion [to strike a claim] must be decided before any motion by the claimant to dismiss the action."); *United States v. $557,993.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 (2d Cir. 2002); *see also* Gov't Cross-Mot. to Strike at 27, ECF No. 43 (arguing Monteverde and Carmona, as shareholders of Deltora, lack Article III standing to contest forfeiture of the Defendant Assets).

"In order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court." *In re 650 Fifth Ave. & Related Props.*, 08-CV-10934, 2021 WL 1226594, at *4 (S.D.N.Y. Mar. 31, 2021) (Preska, J.). Monteverde and Carmona bear the burden of establishing standing. *Mercado v. U.S. Customs Serv.*, 873 F.2d 641, 644 (2d Cir. 1989).  To establish standing, Monteverde and Carmona must show they have "actual possession, dominion, control, title or financial stake" in the Defendant Assets. *United States v. Contents of Acct. Nos. 208-06070 & 208-06068-1-2*, 847 F. Supp. 329,

---

[5] While the Court was drafting the instant Decision & Order, Claimants' counsel filed a letter to the Court stating an intent to withdraw Monteverde's and Carmona's individual claims and to pursue this action solely through Deltora. *See* ECF No. 92 (quoting *United States v. Wallach*, 935 F.2d 445, 462 (2d Cir. 1991)).  The individual claimants' concession of the unviability of their claims, and the support cited in their letter, mirrors the instant opinion and therefore has no effect on the outcome of the instant Decision & Order.  As the Court has already determined, *see* Discussion Section I, Deltora is the only claimant that has standing to pursue its claim.  The Court thus evaluates the motions to dismiss with respect to Deltora's interest in the Defendant Assets.

333 (S.D.N.Y. 1994) (Cedarbaum, J.) (internal citation omitted); *Bacchus v. United States*, 12-CV-5104, 2014 WL 2558800, at *3 (E.D.N.Y. June 6, 2014) (Irizarry, J.).

Monteverde and Carmona fail to carry their burden of establishing standing to contest forfeiture of the Defendant Assets.   The Defendant Assets are held by Deltora in a Raymond James account opened in Deltora's name.   *See* Am. Compl. ¶ 18(f) (stating Deltora is the holder of the Raymond James account); Stipulation, ECF No. 27 (stipulation governing the Defendant Assets' management during this action and indicating the same).   "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003).   "An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets." *Id.* at 475.   Monteverde and Carmona may own stock in Deltora, hold a directorship in Deltora, and open and manage accounts in Deltora's name; nevertheless, they do not directly own Deltora's assets, nor are they corporate claimants with title to the Raymond James account.   *See* Carmona Resp. to Interrog. at 8, ECF No. 45-14 (stating Carmona owns five percent of the shares in Deltora); Monteverde Resp. to Interrog. at 2, ECF No. 45-14 (stating Monteverde's and Carmona's interests in the Defendant Assets are "reflected as stocks, bonds and cash").   In short, because "the shareholder claimants [*i.e.*, Monteverde and Carmona] are neither owners nor lienholders with respect to corporate assets, they have no standing" to contest the forfeiture of such corporate assets. *United States v. New Silver Palace Rest., Inc.*, 810 F. Supp. 440, 442–43 (E.D.N.Y. 1992) (Glasser, J.) (striking individual shareholder claims to seized property where corporation filed a notice of claim to the *in rem* defendants); *United States v. 479 Tamarind Drive, Hallendale, Fla.*, 98-CV-2279, 2011 WL 1045095, at *2 (S.D.N.Y. Mar. 11, 2011) (Cote, J.) (striking claim for lack of standing where claimant "present[ed] no basis for a claim in the property other than as a shareholder, and

no other potential ownership or possessory interest [was] evident from the record available"); *see also United States v. All Assets Held in Account Number XXXXXXXX in name of Doraville Props. Corp.*, 299 F. Supp. 3d 121, 137 (D.D.C. 2018) (striking claims to seized property where individual claimants were only beneficiaries of the trust holding the assets, but allowing a different individual claim to proceed where claimant had an annuity in the trust).[6]

The Court rejects Monteverde's and Carmona's argument that the Government conceded their standing by alleging Monteverde and Carmona exercised control over the Defendant Assets. *See* Claimants' Opp'n to Gov't Cross-Mot. to Strike at 14, ECF No. 48. This argument is belied by Monteverde's and Carmona's own caselaw. *See United States v. Real Prop. Associated with First Beneficial Mortgage Corp.* ("*First Beneficial*"), 08-CV-285, 2009 WL 1035233 (W.D.N.C. Apr. 16, 2009); Claimants' Opp'n to Gov't Cross-Mot. to Strike at 16 (citing *First Beneficial*). In *First Beneficial*, the court held the President and sole shareholder of a corporation lacked standing to challenge a civil forfeiture action against six properties titled in the corporation's name. *Id.* at *1. Had the *First Beneficial* court found standing, it would have allowed the shareholder "to disregard the corporate entity when it suits him and allow the benefit of the corporate entity when he desires." *Id.* at *4. *First Beneficial* therefore supports the finding of this Court: despite Carmona's service as a Deltora director and Monteverde's and Carmona's joint control of Deltora's investment accounts, permitting these interests to confer standing would enable Monteverde and Carmona to cloak themselves in the corporate form when it suits them and to discard the corporate form when it does not.

---

[6] Monteverde and Carmona cite *United States v. All Funds of Perusa, Inc.*, 935 F. Supp. 208 (E.D.N.Y. 1996), *rev'd in part sub. nom.*, 166 F.3d 522 (2d Cir. 1999), as supporting their claim to standing. For the reasons identified by the Government, *Perusa* is plainly inapplicable to the matter at hand. See Gov't Reply for Cross-Motion to Strike at 2–3, ECF No. 54.

Finally, the Court dispenses with Monteverde's and Carmona's incorrect argument that the Government's standing challenge is barred by laches. *See* Claimants' Opp'n to Gov't Cross-Mot. to Strike at 16. "[L]aches is not available against the federal government where, as here, it undertakes to enforce a public right or protect the public interest." *S.E.C. v. Durante*, 641 F. App'x 73, 77 (2d Cir. 2016) (internal citation and quotation marks omitted); *New Silver Palace Rest. Inc.*, 810 F. Supp. at 444 (rejecting laches argument in civil forfeiture action). The Government, moreover, may move to strike a claim in a civil forfeiture action "at any time before trial." Supp. R. G(8)(c)(i)(B).

Because Monteverde and Carmona lack Article III standing to contest the forfeiture proceeding, the Court grants the Government's motion to strike Monteverde's and Carmona's claims to the Defendant Assets. The Court evaluates the remaining motions with respect to Deltora, the proper claimant, and its interest in the Defendant Assets.

## II.    The Government Did Not Violate Deltora's Due Process Rights.

Deltora first moves the Court to dismiss the Amended Complaint on the grounds of due process violations.[7] Due process of law entitles an owner of property seized by the Government to a post-seizure hearing within a reasonable time. *United States v. $8,850*, 461 U.S. 555, 564 (1983). Courts consider four factors when determining whether there has been a due process violation following an asset seizure: (1) the length of the delay; (2) the reason for the delay; (3) the claimants' assertions of their rights to the property; and (4) prejudice to the claimants. *See generally $8,850*. The Supreme Court has deemed the length of the delay as the "overarching factor" in the due process analysis, but "none of these factors is a necessary or sufficient

---

[7] Although Deltora filed its motions to dismiss before the Government filed the Amended Complaint, the Court evaluates Deltora's motions to dismiss with respect to the Amended Complaint because it only deanonymized certain names.

condition for finding unreasonable delay." *Id.* at 565. "Rather, these elements are guides in balancing the interests of the claimant and the Government to assess whether the basic due process requirement of fairness has been satisfied in a particular case." *Id.*

Despite the delays in this case, there has not been a due process violation.

## A. Length of the Delay

The parties disagree on what the actual length of the delay was in this case. But regardless of how it is calculated, the length of the delay was extensive. Accordingly, this factor favors Deltora.

Deltora argues the length of the delay exceeds five years, calculated from the date Magistrate Judge Sansone authorized the seizure warrant in the Middle District of Florida (June 2017) to the lifting of the stay (September 2022). First Mot. to Dismiss at 4. The Government contends the length of the delay is much less—approximately eighteen months—calculated from the date of the asset seizure to the filing of the initial Complaint. Gov't Opp'n to First Mot. to Dismiss at 17. The Government urges the Court to exclude the stay period from the calculation regarding the length of the delay. *Id.*

The Court accounts for the stay period when calculating the length of the delay, as the Government's obligation to proceed expeditiously extends beyond the filing of the forfeiture action to the commencement of trial.[8] *United States v. Banco Cafetero Panama*, 797 F.2d 1154,

---

[8] The Government also argues Deltora's motion to dismiss—as applied to the stay period—is "duplicative of prior challenges" raised before this Court and the Second Circuit. *See* Gov't Opp'n to First Mot. to Dismiss at 12. Although the Court previously denied Deltora's motions to lift the stay, such prior orders do not require the Court to conclude *now* that Claimants suffered no due process violation. To be sure, the Court's granting of a stay—and its subsequent denials of motions to lift the stay—do not support Deltora's contention that there was a five-year-long, Government-induced delay. *See also* Levy Decl., Ex. C (stating Claimants asked the Government to delay lifting the stay for several months). But the Court's prior orders, without a written opinion, do not serve as a decision on Deltora's legitimate due process challenges.

1163 (2d Cir. 1986) ("To require prompt filing of a forfeiture action but allow indefinite postponement of the trial would reduce the filing requirement to a nullity."); *accord United States v. $307,970.00, in U.S. Currency*, 156 F. Supp. 3d 708, 716 (E.D.N.C. 2016) ("[I]f the most due process required was the filing of a complaint, after the government fulfilled that task, its attorneys could sit idly by without ever taking meaningful steps to move the case forward."). At the same time, the Court recognizes the difference—both conceptually and mathematically— between the pre-litigation delay (approximately eighteen months) and the post-commencement-of-litigation delay (approximately forty-one months). The Court considers the reasons for these delays when evaluating the second factor in the due process analysis. *See Banco Cafetero Panama*, 797 F.2d at 1163 ("We leave to the District Court the task of conducting a forfeiture trial within a reasonable time . . . to provide appellants with due process of law.").

After accounting for the period during which this action was stayed, the length of the delay in this case totals over five years, but by any measure, the delay has been significant. *See $8,850* at 565 (holding a delay of eighteen months between asset seizure and filing of forfeiture action was "quite significant"); *accord United States v. One Motor Yacht Named Mercury*, 527 F.2d 1112, 1114 (1st Cir. 1975) (affirming dismissal of forfeiture proceeding on due process grounds and noting it was bound by the district court's finding that "the twelve and one-half month delay [was] 'inexcusable'"). The Court finds this factor weighs in favor of Deltora.

**B. Reason for the Delay**

The Government provides several justifications for the significant delay in this case. One reason—related international criminal investigations and prosecutions—explains the slow nature of the instant proceedings. Therefore, this factor favors the Government.

First, the Government contends Deltora was, in part, responsible for the delay by repeatedly asking the Government to wait before filing the forfeiture complaint. *See* Levy Decl. ¶ 7; *id.*, Ex. B, ECF No. 45-2.[9] And later in the litigation—after the Government notified Deltora it was prepared to lift the stay—Deltora requested an extension of the stay for several months. *See* Levy Decl., Ex. C, ECF No. 45-3. In support of its blame-shifting, the Government cites *$307,970.00*, another civil forfeiture case involving claimant-induced delays. Gov't Opp'n to First Mot. to Dismiss at 21; *see* Deltora's Reply at 6 (responding that *$307,970.00* is factually distinguishable from this case). In *$307,970.00*, four years had passed since the Government seized the funds at issue. 156 F. Supp. 3d at 720. When evaluating the reasons for the delay, the *$307,970.00* court noted both parties had sought and obtained stays. *See $307,970.00* at 714–16, 720. Finding claimants partially responsible for the length of the delay, the *$307,970.00* court concluded the delay did not violate claimants' due process rights. *Id.* Although the Government is the only party who moved for a stay in this case, Deltora asked the Government to delay filing the initial Complaint and to delay filing the motion to lift the stay. While Deltora undoubtedly contributed to the length of the delay, such contributions represented mere months out of the five-year-long delay. The Court proceeds to the Government's next justification for the delay.

The Government's second justification for the delay—which addresses the stay period itself from April 2019 to September 2022—is better supported. Most importantly, the stay period was approved by this Court in accordance with 18 U.S.C. § 981(g). *See* 18 U.S.C. § 981(g) ("Upon the motion of the United States, the court shall stay the forfeiture proceeding if

---

[9] Fourteen months after the seizure, the Government informed Claimants it was prepared to file the Complaint within ninety days. Gov't Opp'n to First Mot. to Dismiss at 21 ("In September of 2018, the Government . . . represented to the court that they would file a forfeiture action within 90 days.").

the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case."); *$307,970.00,* 156 F. Supp. 3d at 718 ("As the court's grant of the government's [§ 981(g)] motion demonstrates, the delay was the result of the government satisfying those statutory criteria."). Section 981(g) authorizes the Government to request a stay in order to protect related criminal investigations. *See $8,850*, 461 U.S. at 567 ("Pending criminal proceedings present similar justifications for delay in instituting civil forfeiture proceedings."); *accord United States v. $131,551.03 Plus Accrued Int. from Sale of 10 Table Bluff Rd., Loleta, CA,* 06-CV-5256, 2010 WL 1135743, at *2–3 (N.D. Cal. Mar. 22, 2010) (denying motion to dismiss where case was stayed for over three years, in part because Government declarations "set forth a legitimate law enforcement-related justification for the delay"); *$307,970.00,* 156 F. Supp. 3d at 718 ("[T]he court does not weigh [a 10-month] delay harshly against the government" because it is "mindful of the tension between criminal investigation and a forfeiture proceeding" and "views the delay as a necessary and permissible attempt to accommodate the criminal matter."). Here, the Government believed, and this Court agreed, that the forfeiture proceeding would impair the integrity of the Government's complex, related criminal investigation, particularly considering the extensive international cooperation involved therein.[10] Mot. to Stay, ECF No. 18; Sealed Graham Decl., ECF No. 19. The related prosecutions have been widespread—as of December

---

[10] The first motion to dismiss also argues the Government's reason for the stay is insufficient because the Government has not brought criminal prosecutions against Monteverde and Carmona. First Mot. to Dismiss at 23. In light of the Court's threshold determination that Monteverde and Carmona lack standing to challenge this civil forfeiture action, this argument is unpersuasive, if not irrelevant. It is also wrong. There is a well-settled understanding that "in civil forfeiture, the government may take property connected to criminality, even if the property's current owner or possessor is not guilty of any crime." *United States v. Elias,* 23-6626 at 11 (2d Cir. Oct. 8, 2025).

2022, the Government had initiated four criminal prosecutions and the forfeiture of assets belonging to the former Peruvian president.  Gov't Opp'n to First Mot. to Dismiss at 19. Furthermore, the Government dealt with unforeseen difficulties resulting from the COVID-19 pandemic, which "hampered [its] ability to empanel and present to the grand jury, . . . [and] to pursue evidence and travel to witness interviews overseas." Gov't Opp'n to First Mot. to Dismiss at 19.  The extensive and complicated international nature of the related criminal proceedings supports the Government's reason for the delay.

Accordingly, the Government has provided valid reasoning to explain the life of this case.  Despite the relatively long period between the asset seizure and filing of the initial Complaint, most of the delay in this case can be attributed to the lengthy stay coupled with Claimants' contributory setbacks.  Outside of the reasons identified by the Government, any other delays have been attributable to the Court's schedule. *See $307,970.00* at 718 (recognizing the same).  Therefore, this factor weighs in the Government's favor.

### C. Deltora's Assertions of Its Rights

The third factor—Deltora's assertions of its rights—favors neither party.  "A claimant is able to trigger rapid filing of a forfeiture action if he desires it." *$8,850*, 461 U.S. at 569. Therefore, "failure to use these remedies can be taken as some indication that [claimants] did not desire an early judicial hearing." *Id.*

After a few months' communication with the Government, Deltora did not challenge the asset seizure for about a year.  Levy Decl. ¶ 5.  Specifically, in July 2017, the parties agreed to maintain the Defendant Assets at Raymond James, rather than to liquidate the account.  Levy Decl. ¶¶ 3–5.  Then, from September 2017 to approximately June 2018, neither Deltora's prior counsel nor Monteverde or Carmona contacted the Government about the seized assets.  *Id.*

Deltora argues it failed to assert its rights because Monteverde and Carmona were unfamiliar with the U.S. legal system, an explanation which appears reasonable on its face given their foreign citizenship, but which is belied by the fact that all parties were represented by counsel. Reply at 7. Ultimately, Deltora did not challenge the seizure for a year and does not provide a compelling reason explaining why.

Shortly after obtaining new counsel, Deltora vigorously asserted its rights by: (1) filing motions to unseal and for the return of property in the Middle District of Florida; (2) filing a civil action in the Middle District of Florida; and (3) moving to dismiss this case, opposing the stay, filing appeals, and requesting updates on the status of the stay. First Mot. to Dismiss at 25; Reply at 10.

Deltora's decision not to challenge the asset seizure until 2018 favors the Government, but Deltora's vigorous assertion of its rights since then weighs in its favor. All things considered, this factor nets neutral.

### D. Prejudice From the Delay

The fourth factor—prejudice from the delay—weighs in favor of the Government because Deltora does not offer specific, compelling reasons establishing such prejudice. First, Deltora contends it has been prejudiced by the restraint on its brokerage account, which prevents it from "freely deposit[ing] money in the account" and "tak[ing] distributions from the account" when necessary for business purposes. First Mot. to Dismiss at 27. While this may be true, Deltora's argument does not address the type of prejudice contemplated by this factor. "The primary inquiry here is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence." *$8,850*, 461 U.S. at 569. In this regard, Deltora argues its ability to present a meritorious defense has been

prejudiced by the delay because a key witness, Mr. Jorge Salinas, has died. First Mot. to Dismiss at 26. If Mr. Salinas planned to offer favorable testimony at trial (which Deltora does not explicitly say), Deltora could have sought to temporarily lift the stay to obtain such testimony. Other than this vague assertion, Deltora has not shown any other reason why Mr. Salinas's death has prejudiced its case. Furthermore, Deltora has failed to explain how the delay has otherwise hampered its ability to maintain and collect evidence necessary to presenting a meritorious defense. Just as the passage of time makes it more difficult for Deltora to obtain evidence, it also negatively impacts the Government's case. *See $307,970.00* at 720. Because Deltora only offers vague concerns—instead of specific reasons—as to why the death of one allegedly favorable witness was crucial to its defense, Deltora has not established prejudice from the delay.

Considering all four factors, the delay in this litigation does not compel dismissal for due process violations. Although they were long, the delays stemmed primarily from the Government's related criminal investigations and prosecutions. Such related proceedings have justified significant delays in other civil forfeiture actions, and they do in this case. Therefore, Claimants' motion to dismiss for due process violations is DENIED.

**III.    The Amended Complaint Adequately Specifies Violations of the FCPA and Panamanian Law and Asserts Proper Venue in the Eastern District of New York.**

Next, Deltora moves to dismiss the Amended Complaint for failure to allege a specified unlawful activity and for improper venue. *See generally* Second Mot. to Dismiss. The Court rejects both arguments.

## A. Failure to Allege a Specified Unlawful Activity

Under 18 U.S.C. § 981, any property involved in, derived from, or traceable to a "specified unlawful activity" is subject to forfeiture to the United States.[11]  In this case, the Government asserts five bases under 18 U.S.C. § 981 to justify forfeiture of the Defendant Assets; these bases can be broken down into two categories.  First, the Government alleges the Defendant Assets were involved in, derived from, or traceable to foreign offenses involving bribery of a public official and violations of the FCPA and Panamanian criminal law (*i.e.*, the "specified unlawful activity").  Am. Compl. ¶ 60.  Second and relatedly, the Government contends the Defendant Assets were involved in or traceable to money laundering transactions and a conspiracy to commit money laundering.  Am. Compl. ¶¶ 63–74.  These allegations of money laundering also require the Government to show the Defendant Assets are traceable to the specified unlawful activity.  *See, e.g.* Am. Compl. ¶ 73 (citing 18 U.S.C. § 1956(a)(1)(B)(i)); *see* 18 U.S.C. § 1956(a)(1)(B)(i) ("Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts . . . such a financial transaction . . . knowing the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.").

With respect to the predicate offenses (bribery of a public official, and violations of the FCPA and Panamanian law), the Government alleges Odebrecht's subsidiary, Klienfeld Services Ltd. ("Klienfeld"), sent money to Claimants' bank accounts as payment to foreign publicists for "campaign services" benefitting then-Panamanian president Ricardo Alberto Martinelli Berrocal.

---

[11] The specified unlawful activity is defined in 18 U.S.C. § 1956(c)(7)(a), (c)(7)(b)(iv), and (c)(7)(D).  *See* Am. Compl. ¶¶ 59–74; *see also* Second Mot. to Dismiss at 5 (chart defining forfeiture authority and specified unlawful activity).

Am. Compl. ¶¶ 18(b), 28–29. Odebrecht allegedly sent those payments "to influence Martinelli in connection with contracts Odebrecht had obtained and sought to obtain in Panama." *Id.* ¶ 29. For several reasons, Deltora contends the Government has not sufficiently alleged conduct constituting bribery of a public official and, as a result, has not sufficiently alleged a money laundering offense. Second Mot. to Dismiss at 10–11.

The Government has satisfied the heightened pleading standard for *in rem* civil forfeiture actions. Under Supplemental Rule G(2)(f), complaints in civil forfeiture actions must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." As outlined in the Government's opposition to the instant motion to dismiss, the Amended Complaint alleges extensive details related to Odebrecht's bribery scheme, the benefits Odebrecht expected to receive from the bribery funds, the relationship between the Defendant Assets and the bribery scheme, and Claimants' alleged involvement in the money laundering operation. Gov't Opp'n to Second Mot. to Dismiss at 6–7, 19; *see* Am. Compl. ¶¶ 21–34. For example, the Amended Complaint lists several money transfers from Klienfeld into Deltora's account at St. Georges Bank & Trust in the Cayman Islands (the "Deltora Cayman Account"), including the amount and date of each transfer, and alleges Klienfeld "was used by Odebrecht for illicit purposes" and "did not engage in any legitimate business activity" that may explain the transfers. Am. Compl. ¶¶ 37, 40. The Amended Complaint then explains how Claimants allegedly: (1) presented fake documents to facilitate the transfers; (2) laundered the illicit proceeds through other entities they controlled; and (3) eventually wired that money into Deltora's account at Raymond James. *See* Am. Compl. ¶¶ 41–58. The Government's allegations regarding Claimants' participation in a complex bribery and money laundering operation involving the former president of Panama support a reasonable

belief the Government will be able to establish violations of the FCPA or Panamanian criminal law at trial.

On a more granular level, Deltora also takes issue with the lack of allegations about specific wire transfers into the Deltora Account that the Government alleges constitute bribery payments. Those wire transfers originated from two other accounts controlled by Monteverde and Carmona, which were under the names of two offshore companies: (1) Isagon SAC ("Isagon") and (2) Inversiones El Sanctuario SAC ("Inversiones El Sanctuario"). *See* Am. Compl. ¶ 18 (g), (h). Deltora contends the Government fails to specify how those transfers *in particular* were derived from, involved in, or traceable to the predicate offenses. Second Mot. to Dismiss at 11–12 (noting the Government fails to allege when and from whom Monteverde and Carmona's Isagon account received a $4.4 million payment); *but see* Am. Compl. ¶¶ 29, 31, 51 (discussing the Isagon account and identifying wire transfers from entities controlled by Monteverde and Carmona into the Deltora Account). Deltora's arguments are misguided. At the pleading stage, the Government need not trace every allegedly improper transaction to specific illegal activity. *See United States v. Mondragon*, 313 F.3d 862, 866–67 (4th Cir. 2002) (affirming denial of motion to strike the complaint where complaint lacked information about the drug transactions giving rise to the seized cash); Advisory Comm. Note Supp. Rule G (stating Supp. Rule G(2)(f) should be read consistent with *Mondragon*); *United States v. Dime Sav. Bank of Williamsburg Acct. No. 58—400738—1*, 255 F. Supp. 2d 56, 69 (E.D.N.Y. 2003) (Levy, Mag.) (denying motion to dismiss where claimant argued "the government is required to allege facts showing that each transfer can be traced to specific deposits of criminally deposited monies"). The standard articulated in Supplemental Rule G(2)(f) does not require the Government to provide a detailed accounting of this money laundering scheme at the pleading

stage, especially where many of the transactions were conducted using offshore entities and international bank accounts. *See* Gov't Opp'n to Second Mot. to Dismiss at 8–9. Although the Government will need to provide more information to prove its claims at trial, the Amended Complaint offers more than enough information to allow Claimants to investigate the allegations. *See Mondragon*, 313 F.3d at 866–67 (stating the purpose of a civil forfeiture complaint is to allow claimants to "commence an investigation of the facts and to frame a responsive pleading"); *see also* Advisory Comm. Note Supp. Rule G (stating the standard in Supp. Rule E(2)(a), which is discussed in *Mondragon*, now applies to civil forfeiture actions in accordance with Supp. Rule G(2)(f)). Because the allegations clearly outline the Government's theory of the underlying crimes and the money laundering operation, the Amended Complaint is sufficient "to support a reasonable belief that the [G]overnment will be able to meet its burden of proof at trial." Supp. R. G(2)(f)*; see Dime Sav. Bank*, 255 F. Supp. 2d at 68 ("[T]he issue before the court is pleading, not proof at trial. Thus, the court need not pass on the government's ultimate burden of proof regarding traceability."); *Mondragon*, 313 F.3d 862 at 866.

Deltora's remaining arguments regarding the depth—or lack thereof—of the factual allegations in the Amended Complaint fall flat. The informational gaps identified by Deltora are relatively minor and concern details to be borne out at trial. *See, e.g.*, Second Mot. to Dismiss at 14 (arguing the Complaint lacks allegations about who received the campaign services and how Odebrecht sought to benefit from those services); *id.* (contending the Complaint did "nothing more than illustrate th[at] Odebrecht privately donated to campaign financing"). Deltora seeks a complaint so comprehensive as to vitiate the need for trial or further fact-finding.

Deltora's critiques about the legal viability of the Government's case similarly lack merit. Deltora asserts the *Hoskins* cases, which imposed territorial requirements for establishing

criminal liability under the FCPA, preclude forfeiture of the Defendant Assets. *See generally United States v. Hoskins*, 902 F.3d 69 (2d Cir. 2018); *United States v. Hoskins*, 44 F.4th 140 (2d Cir. 2022). This argument is misplaced. Deltora incorrectly conflates criminal liability under the FCPA and civil forfeiture of monies traceable to FCPA violations. *See* Second Mot. to Dismiss at 15–18; Gov't Opp'n to Second Mot. to Dismiss at 13–16. But if there was any doubt about the applicability of the *Hoskins* cases, the Amended Complaint resolves it. The Amended Complaint alleges conduct occurring in the United States and related to the bribery scheme: "[M]any of the funds deposited into Klienfeld's Antigua and Barbuda account were caused by an agent of Odebrecht while in the United States." Am. Compl. ¶ 18(b). Therefore, Deltora's argument under *Hoskins* fails.

Deltora also contends "the allegation that Deltora's Cayman Islands Account received money from Klienfeld is insufficient to state a violation of Panamanian articles 345, 347, 351, and 354 as a specified unlawful activity . . . which is necessary to state a cause of action for forfeiture." Second Mot. to Dismiss at 19. With respect to financial transactions, a "specified unlawful activity" means "an offense against a foreign nation involving bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official." 18 U.S.C. § 1956(c)(7)(B)(iv). Deltora states the Panamanian Articles do not involve either type of offense. Second Mot. to Dismiss at 20. This argument is, at best, wrong and at worst, intentionally misleading. Article 351 of the Panamanian Criminal Code (Unjustified Enrichment) criminalizes the receipt of income "whose licit origin cannot be justified" by "public servant[s], personally or through an intermediary." Am. Compl., Attach. A. Articles 345, 347, and 354 clearly criminalize "bribery of a public official" using similar language. *See id.*; *see also United States v. Real Prop. Known as Unit 5B of Onyx Chelsea*

*Condo*, 10-CV-5390, 2012 WL 1883371, at *5 (S.D.N.Y. May 12, 2012) (Forrest, J.) (holding the violation of a foreign offense under Section 1956(c)(7)(B)(iv) is "defined by the relevant foreign nation"); Am. Compl. ¶ 18(i) (alleging Martinelli was a "public official" under Section 1956(c)(7)(B)(iv) and a "public servant" within the meaning of Panamanian law). The Court therefore swiftly rejects this argument. Deltora's remaining contention—that the Government must identify which Article of the Panamanian Criminal Code applies to the alleged misconduct—misses the mark. *See* Second Mot. to Dismiss at 21. All four provisions could apply to the alleged misconduct, and the Government bears the burden of proving those violations of Panamanian law at trial. The Court rejects Deltora's myriad arguments and denies the motion to dismiss for failure to allege a specified unlawful activity.

### B. Failure to Allege Improper Venue

Deltora also argues the Amended Complaint should be dismissed because venue is not proper in the Eastern District of New York. Second Mot. to Dismiss at 22. On a motion to dismiss for improper venue, the plaintiff bears the burden of making a *prima facie* showing of appropriate venue. *Study Logic, LLC v. Farmer Bros. Co.*, 18-CV-1645, 2019 WL 3412114, at *4 (E.D.N.Y. July 29, 2019) (Dearie, J.); *see* Fed. R. Civ. P. 12(b)(3). The district court views all facts in the light most favorable to the plaintiff. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).

Under 28 U.S.C. § 1355, forfeiture actions may be brought in the district in which any of the acts or omissions giving rise to the forfeiture occurred. 28 U.S.C. § 1355(b)(1). Deltora contends the alleged acts occurred in the Cayman Islands, Antigua, Brazil, and Panama—not in the United States. Second Mot. to Dismiss at 22. The Government counters that the "acts giving

rise to the forfeiture, specifically, wire transfers, occurred in this district." Gov't Opp'n to Second Mot. to Dismiss at 20.[12]

The Government adequately alleges venue is proper in the Eastern District of New York because wire transfers in furtherance of the bribery and money laundering scheme passed through the district. "[V]enue lies where a wire in furtherance of a scheme begins its course, continues, or ends." *United States v. Rutigliano*, 790 F.3d 389, 397 (2d Cir. 2015). The Government contends two wire transfers passed through U.S. correspondent accounts[13] in New York City on September 25, 2014, and December 22, 2014, respectively. Gov't Opp'n to Second Mot. to Dismiss at 22. While the Court did not locate such dates in the Complaint or Amended Complaint, the Amended Complaint does allege nine wire transfers from Klienfeld's account at Meinl Bank in Antigua (the "Klienfeld Account") were sent to the Deltora Cayman Account through Standard Chartered Bank in New York. Am. Compl. ¶ 32, 39. The Court considers these allegations sufficient to establish that at least *one* wire transfer involved in the bribery and money laundering scheme was routed through New York City and was processed by a Manhattan-based payment processing center. *See* Pepitone Decl. ¶¶ 8–11, ECF No. 51; Gov't Opp'n to Second Mot. to Dismiss at 22. In order to be processed by the Manhattan-based center, those wire transfers must have traversed the waters over the jurisdiction of the Eastern District of New York.[14] Because "acts" giving rise to the forfeiture—*i.e.,* wire transfers—occurred in the

---

[12] Venue is also proper in: (1) the district where a forfeiture action accrues or the defendant is found; (2) the district where such property is found; or (3) the district into which the property is brought. 28 U.S.C. § 1395; *see id.* § 1355 (stating venue is proper in any other district where specifically provided for in section 1395 of this title).

[13] A "correspondent account" is "an account established to receive deposits from, make payments on behalf of a foreign financial institution, or handle other financial transactions related to such institution." 31 U.S.C. § 5318(A)(e)(1)(B).

[14] The Eastern District of New York includes "the waters within the counties of Bronx and New York." 28 U.S.C. § 112(c).

Eastern District of New York, the Government adequately alleges venue in this district. *See Rutigliano*, 790 F.3d at 397; *United States v. $198,573.85 in U.S. Currency*, 13-CV-1180, 2014 WL 859137, at *3–4 (N.D.N.Y. Mar. 5, 2014) (Hurd, J.) (denying motion to dismiss for improper venue where members of a conspiracy agreed to a drug sale and one member of the conspiracy executed a wire transfer originating from the district); *see also United States v. Ho*, 984 F.3d 191, 205 (2d Cir. 2010) (holding the money laundering statute applies to wire transfers passing through United States accounts, even if the United States is "neither the point of origination nor the end destination for the money"); *United States v. Obaid*, 971 F.3d 1095, 1106 (9th Cir. 2020) (holding claimants' personal involvement in the conspiracy was immaterial to the venue analysis because the forfeiture "action is predicated on whether the [company] shares, *i.e.*, the res, are traceable to the proceeds of the crime").

The Government has carried its burden to make a prima facie showing of venue under 28 U.S.C. § 1355. The Court does not consider the Government's alternative arguments under 28 U.S.C. § 1395 and 18 U.S.C. § 981(h). The Court denies Deltora's motion to dismiss for improper venue.

### IV.    In the Context of This Action, the Government Has Moved with Appropriate Diligence.

As evidenced by the Government's regular participation in this action, Deltora's motion to dismiss for failure to prosecute is without merit. Courts in the Second Circuit consider five factors when determining whether to dismiss for failure to prosecute: "(1) whether the plaintiff's failure to prosecute caused a delay of significant duration; (2) whether the plaintiff was notified that further delay would result in dismissal; (3) whether the defendant was likely to be prejudiced by further delay; (4) whether the need to alleviate court calendar congestion outweighs the plaintiff's right to have his day in court; and (5) whether lesser sanctions would be appropriate."

*Leya v. Mayorkas*, 24-CV-3980, 2025 WL 35942, at *1 (E.D.N.Y. Jan. 6, 2025) (Donnelly, J.)

(quoting *U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004)).

Deltora's motion fails on the first factor alone: the Government has prosecuted this case

with sufficient speed, and any failure to proceed diligently on the Government's part has not

caused a serious delay. In support of the first factor, Deltora notes this case has been on the

docket for more than six years, with their motions to dismiss pending for more than two years.

Third Mot. to Dismiss at 5. But Deltora's attempt to blame the Government for the slow pace of

this litigation is misguided. As explained above, the delays are largely attributable to the stay

period and the Court's docket management. *See* Discussion Section II.B (evaluating the reasons

behind the length of the delay). And although the Government itself moved for the stay, the

Court declines to characterize this action as a "failure to prosecute." Indeed, a "failure to

prosecute" involves inaction on the part of the plaintiff. That is not the case here, especially

where the Court granted the stay and subsequently denied motions to lift the stay.

Deltora also argues "the [G]overnment has done virtually nothing [to move discovery

forward] . . . [b]eyond the limited request for records at the end of 2023." Third Mot. to Dismiss

at 3. This is incorrect. The Government has produced over 35,000 pages of material and sought

contact information for Deltora's witnesses. *See* Gov't Opp'n to Third Mot. to Dismiss at 3.

Deltora's version of events is further disproven by a February 2024 email from the Government

asking to discuss "the status of discovery, Claimants' interrogatory responses, and deposition

scheduling." *Id.*, Ex. B, ECF No. 70-2. Notably, Deltora's counsel replied that "a deposition

scheduling conference is premature as [he has] not propounded any discovery regarding [the

Government's] possible witnesses . . . [and the parties] have not received a ruling on either

motion to dismiss." *Id.* Following the August 2025 status conference, the parties have also

engaged in briefing about discovery issues. *See, e.g.,* ECF Nos. 83–85.

The Government has been actively pursuing this case, and the Court has fulfilled

Deltora's request for discovery deadlines and a trial date. *See* Order, ECF No. 76. Deltora's

motion to dismiss for failure to prosecute is denied.

## V.    Custody of the Defendant Assets

Finally, the Court addresses non-party Raymond James's motion to transfer custody of

the Defendant Assets to the Government. *See generally* Mot. for Release of Funds. Raymond

James argues it "has been the forced custodian of the Defendant Assets for more than seven

years" and, during that time, it has been burdened with:  (1) providing a monthly accounting of

the Deltora Account to the U.S. Marshals service; (2) meeting anti-money laundering ("AML")

requirements for the Deltora Account; and (3) paying legal fees in connection with this action.

*Id.* at 6. The Government is willing to assume custody of the Defendant Assets. *See* Gov't

Response to Mot. for Release of Funds at 3 ("[The Government] does not oppose the Motion and

notes that the cash, which currently comprises the vast majority of the Defendant Assets, would

earn interest at a significantly higher rate if moved to [the Government's Seized Asset Deposit

Fund]."), ECF No. 66. Claimants oppose the proposed transfer. *See generally* Claimants'

Response to Mot. for Release of Funds, ECF No. 64.

Raymond James argues 18 U.S.C. § 983(j)(1) authorizes the Court to "order the

Defendant Assets to be transferred to and held by the Government instead." Mot. for Release of

Funds at 6–7. But 18 U.S.C. § 983(j)(1) appears to limit the Court's ability to restrain seized

assets "[u]pon application of the United States." Indeed, when the Court so-ordered the

Stipulation maintaining the Defendant Assets in the Deltora Account at Raymond James, ECF

No. 27, it did so upon a joint application submitted by the Government, ECF No. 26. Raymond

James has not provided the Court with any case law supporting its position that 18 U.S.C. § 983(j)(1) authorizes the Court to modify the Stipulation upon the motion of a non-party. The Court therefore directs Raymond James, Deltora, and the Government to file supplemental briefs as to: (1) the Court's authority to order the transfer of the Defendant Assets upon the motion of a non-party; and (2) the standard by which the Court should review any such motion to modify the Stipulation. These supplemental briefs shall be simultaneously filed on ECF on or by Friday, February 13, 2026, at 5:00 P.M.

CONCLUSION

The Court **DENIES** Deltora's motions to dismiss at ECF Nos. 39, 40, 67. The Court **RESERVES** on Raymond James's motion at ECF No. 62.

SO ORDERED.

**s/WFK**
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: December 18, 2025
      Brooklyn, New York